IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ANTONIO LASHAUN CRUZ,      )<br>  Plaintiff,     ) | Civil Action No. 7:20-cv-00695 |
| )<br>v.       )<br>       )<br>M. CHILDERS, *et al.*,    )<br>  Defendants.    ) | By: Elizabeth K. Dillon<br>United States District Judge |

**MEMORANDUM OPINION**

Plaintiff Antonio LaShaun Cruz, a federal prisoner proceeding *pro se*, filed this civil rights action asserting claims pursuant to *Bivens v. v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and its progeny. His claims arise from alleged events at United States Penitentiary Lee County ("USP Lee"), and he names seventeen individuals as defendants, all of whom worked at USP Lee at the relevant time. Pending before the court is defendants' motion to dismiss or, in the alternative, for summary judgment, brought on behalf of all defendants, to which Cruz has responded. Defendants have not filed a reply.

The court has considered materials outside the pleadings submitted by both parties, and so the court will treat defendants' motion as one for summary judgment under Federal Rule of Civil Procedure 56, as opposed to a motion to dismiss. Defendants' primary argument is that Cruz failed to exhaust his administrative remedies prior to bringing suit, as required by the Prison Litigation Report Act ("PLRA"), 42 U.S.C. § 1997e. As discussed herein, though, the court concludes that there are disputes of fact as to whether Cruz failed to exhaust available administrative remedies. Accordingly, the court will deny without prejudice the motion for summary judgment and refer this matter to the U.S. Magistrate Judge for an evidentiary hearing on the exhaustion issue.

Defendants also seek dismissal on the grounds of qualified immunity, but the court concludes that defendants are not entitled to qualified immunity, at least based on the only arguments they have briefed. Their request for qualified immunity will be denied without prejudice.

Lastly, defendants contend that, as to five of the defendants, Cruz has failed to state a valid claim against them. That portion of defendants' motion will be denied without prejudice. The court will sever claims against three of those defendants, however, because those claims are based on unrelated incidents and those defendants are improperly joined in this lawsuit. As to the other two defendants, the court denies without prejudice their motion for summary judgment. In the event that it is determined that Cruz in fact exhausted some or all of his administrative remedies regarding the claims against those defendants, then they may file a renewed summary judgment motion at that time.

## I. BACKGROUND

### A. Plaintiff's Allegations and Claims

In his verified amended complaint, Cruz alleges that, on July 13 and 14, 2019, he was subject to excessive force by staff, assaulted, and then placed—and left for almost a full day—in ambulatory restraints that were too tight for him. According to the declaration of Jamie Canfield, an Special Investigative Agent for USP Lee, the incident began when Cruz refused to receive a required skin test for tuberculosis after being directed to submit to the test by Nurse Parker. (Canfield Decl. ¶¶ 6–7, Dkt. No. 39-2.) He told Nurse Parker that he was "not taking that shit." (*Id.*) Cruz alleges that the incident was "fabricated by Parker," (Am. Compl. 3, Dkt.

No. 27).[1]  The parties agree, though, that on July 13, 2019, Cruz was ordered to the lieutenant's office to be served with an incident report for refusing to get the TB test.

Cruz alleges that, after he was served with the report, defendants Lt. Childers and J. Nichols made racially offensive statements to him and threatened him by telling him he was about "to become another reason for Black Lives Matter to cry." (*Id.* at 4.) Childers then nodded at Officer Dickenson, who had escorted Cruz to the office, and Dickenson attempted to choke Cruz and dragged him to the ground. Childers and Nichols then "punched, kicked, and bent/pulled/twister/jerked" Cruz's arms and legs in a way that could break limbs. (*Id.*) Dickenson continued to choke Cruz until he passed out.

When Cruz regained consciousness, there were multiple staff "assaulting him 'lynching style,' yelling and screaming racial slurs while he was handcuff[ed] and shackled." (*Id.*) He was then "slammed down" into a restraint-styled wheelchair and taken to the Special Housing Unit ("SHU"). He claims that, during the escort, his head was forced down toward his crotch, his neck was being squeezed, and officers punched and elbowed him in his face, head, and chest. (*Id.*) He further maintains that officers formed a "human wall" of staff so that their assaults would not be seen on cameras.

After Cruz arrived in the SHU, defendants "violently" ripped off his clothes and placed Cruz in ambulatory restraints, and he was left in the restraints for almost a full day. (*Id.* at 4–5.) Canfield's declaration and attached documents reflect that Cruz was placed in ambulatory restraints at approximately 3:15 p.m. on July 13, 2019, and that staff removed the restraints at approximately 1:15 p.m. on July 14, 2019, a total period of 22 hours. (Canfield Decl. ¶¶ 12–14.)

---

[1] Page numbers refer to those assigned by the Clerk's Case Management/Electronic Case Monitoring System.

3

Cruz claims that the restraints were too tight and that defendants failed to medically intervene, instead fabricating documents stating that his restraints were not too tight and that his physical condition was normal. (*See generally* Am. Compl.)

He further states that Childers and Nichols falsified the restraint checks, performed every two hours, by saying Cruz was disruptive while in the SHU cell, even though he was not. They did this to "justify their continued assault" upon him for his time in restraints. (*Id.* at 5.) Cruz claims that during some of the restraint checks, one or more defendants "slammed [the] protective shield down" onto the back of Cruz's knees even though he was already kneeling. (*Id.* at 8.)

His claims against most of the other defendants stem from the same events, and his amended complaint lists each defendant separately and states what the defendant allegedly did during the incident. For example, he accuses one or more specific defendants of making racist remarks and using racial slurs during restraint checks, ordering that his restraints be tightened or refusing to loosen them, slapping Cruz across the face multiple times, assaulting him, yanking on his restraints, and making comments to him about his "paper pushing" or prior grievances or complaints he had filed.[2] (*See generally* Am. Compl.) He also accuses a number of defendants of falsifying forms related to the incident or falsely "debriefing" about it. (*See generally id.*)

Cruz's amended complaint also appears to be asserting claims based on disciplinary proceedings that occurred in July and August 2020, related to Incident Report No. 3420290. He alleges that defendant Vinzant filed a false disciplinary report against him and improperly seized

---

[2] Cruz appears to be alleging that at least some of the defendants assaulted him in retaliation for his filing of grievances and complaints in the past. However, to the extent that he is attempting to assert a retaliation claim, the Supreme Court recently has made clear that there is no general claim of "retaliation" against federal officers. *Egbert v. Boule*, 142 S. Ct. 1793, 1807 (2022) ("We hold that there is no *Bivens* action for First Amendment retaliation.").

his property. He also alleges that there were due process violations during the disciplinary hearing and appeals, and faults defendants Mullins and Brown for those.[3]

Both parties also have presented evidence concerning Cruz's efforts to exhaust his administrative remedies. The court discusses that evidence in context below.

## B. Defendants' Motion

Defendants have filed a motion to dismiss or in the alternative, for summary judgment, in which they make three arguments. First, as noted above, their primary argument is that the PLRA bars Cruz from proceeding in court because he failed to exhaust his available administrative remedies as to his claims based on the July 2019 incidents. (Mem. Supp. Mot. Summ. J. 7–11, Dkt. No. 39.) Second, defendants contend that they are entitled to qualified immunity. (*Id.* at 13–14.) Third, they assert that five specific defendants should be dismissed because the amended complaint fails to state a claim against them for which relief can be granted. (*Id.* at 11–13.)

## II. DISCUSSION

## A. Summary Judgment Standard

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). In making that determination, the court must take "the evidence and all

---

[3] Plaintiff also describes an incident in March 2019 when he and his cellmate were allegedly falsely charged with a disciplinary offense. He does not appear to be asserting any separate claim based on those events, however. He simply discusses the facts in a portion of his amended complaint titled "Judicial Notice," explaining that this was the beginning of harassment and retaliation by staff. (Am. Compl. 17.)

reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990).

## B. Qualified Immunity

Addressing defendants' request for qualified immunity, the court cannot find at this stage that defendants are entitled to qualified immunity. Defendants' briefing on the issue of qualified immunity consists of a few paragraphs concerning the proper standard. In applying that standard to the facts here, defendants summarily state: "Under either of the *Saucier* steps, it is clear that the facts as alleged by Cruz fail to show a violation of a constitutional right. Under *Hudson*, Defendants did not fail to protect Cruz, or engage in an unjustified or excessive use of force, and are therefore entitled to qualified immunity." (Mem. Supp. Mot. Summ. J. 14.) That is the entirety of their qualified immunity analysis.

Assuming that an Eighth Amendment excessive force claim is cognizable here,[4] the court cannot agree that Cruz's allegations fail to allege an Eighth Amendment violation in the form of

---

[4] In a footnote, defendants state their position that Cruz's claims "are not cognizable under *Ziglar v. Abbasi*, __ U.S. __, 137 S. Ct. 1843 (2017)." (Mem. Supp. Mot. Summ. J. 8 n.3.) They explain that they are not briefing that argument for the sake of brevity. Instead, they reserve the right to do so if Cruz's claims survive the ruling on this motion. Because the court does not have the benefit of any briefing on the availability of a *Bivens*-type remedy for Cruz's claims, it will not rule on this issue. The denial of defendants' motion without prejudice leaves defendants free to raise such arguments in a separate summary judgment motion, should they so choose.

"an unjustified or excessive use of force." (*Cf. id.*)  As the court must, it considers the facts in the light most favorable to the plaintiff when ruling on a defendant's summary judgment motion. *Yates v. Terry*, 817 F.3d 877, 883–84 (4th Cir. 2016).  Among other allegations, Cruz alleges that he was choked into unconsciousness by Dickenson, although he was handcuffed and was not being disruptive in any way or failing to obey any order.  He alleges that Childers and Nichols punched and kicked him without provocation.  He also alleges that, while fully restrained in a chair and surrounded by a "wall" of officers, he was repeatedly punched, kicked, and assaulted.  Those facts adequately allege an Eighth Amendment violation.  *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (holding that plaintiff stated an Eighth Amendment violation when he alleged that he was punched, kicked, kneed, choked, and body-slammed without provocation).

## C. Exhaustion under the Prison Litigation Reform Act

Turning next to defendants' arguments concerning Cruz's failure to exhaust, the PLRA requires a prisoner-plaintiff to exhaust his available administrative remedies prior to bringing suit.  42 U.S.C. § 1997e(a).  "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199, 211 (2007).  Moreover, *proper* exhaustion of remedies is required, which includes "compliance with an agency's deadlines and other critical procedural rules."  *Woodford v. Ngo*, 548 U.S. 81, 91–92 (2006).  District courts may not "excuse a failure to exhaust."  *Ross v. Blake*, 578 U.S. 632, 639 (2016).

A prison official has the burden to prove an inmate's failure to exhaust available administrative remedies.  *Jones*, 549 U.S. at 216.  Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the inmate to show, by a preponderance of the evidence, that exhaustion occurred or that administrative remedies were unavailable.  *See, e.g.*, *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011); *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011).

7

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). The Supreme Court has explained that an administrative remedy is considered unavailable when: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643; *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) ("[W]hen prison officials prevent inmates from using the administrative process . . . the process that exists on paper becomes unavailable in reality.").

1.  **The BOP's Administrative Remedy Procedure**

The BOP's administrative remedy procedure is relatively straightforward, and basically involves three steps: the filing of an informal complaint, the filing of a formal complaint, and two levels of appeal. The first step requires the inmate to "present an issue of concern informally to the staff." 28 C.F.R. § 542.13(a). Each Warden must establish procedures for inmates at his institution to do so. *Id.* Based on statements by Cruz, it appears that an inmate may use a BP-8 form to attempt to informally resolve his complaint.

Second, if an inmate is unable to resolve his complaint informally, he may file a formal written complaint (an "Administrative Remedy Request") with the institution on the proper form within twenty calendar days of the incident at issue. *Id.* § 542.14(a). Generally, an inmate must obtain the appropriate form (a BP-9 form) and return it to his correctional counselor. *Id.* § 542.14(c)(1), (4).

Third, an inmate has two levels of appeal that he may pursue. If an inmate is dissatisfied with the Warden's response to his BP-9, he may appeal to the Regional Director within twenty

8

calendar days of the Warden's response, using the appropriate form (a BP-10 form).  *Id.* § 542.15(a).  If the inmate still is not satisfied, he may appeal the Regional Director's response to the Office of General Counsel, using the appropriate form (a BP-11 form), within thirty calendar days of the date the Regional Director signed the response.  *Id.*  Appeal to the General Counsel is the final administrative appeal.  *Id.* § 542.15(a).

Moreover, a BOP prisoner who fears for his safety in filing a complaint or informal complaint at his facility may file a "sensitive" request by sending his concerns directly to the appropriate Regional Director.  28 C.F.R. § 542.14(d)(1).

### 2. Cruz's Exhaustion Efforts

According to the declaration of Destiny Spearen, who works as a paralegal supporting USP Lee and other BOP facilities, Cruz was incarcerated at USP Lee from April 10, 2018, through November 17, 2020.  She explains that Cruz

> filed an administrative remedy to the region office related to staff misconduct on April 12, 2021, approximately 1 year and 9 months after the incident, and 5 months after being transferred from USP Lee.  These claims were rejected because Plaintiff did not initially file a remedy with the institution.  Plaintiff was notified that he could resubmit the appeal in the proper form within 10 days.
>
> On July 15, 2021, Plaintiff submitted another administrative remedy to the region concerning staff misconduct, and this administrative remedy was rejected for the exact same reasons as the April 12, 2021 administrative remedy.  Plaintiff was again advised that he could resubmit his appeal in the proper form within 10 days.
>
> Plaintiff has not filed any other administrative remedies regarding staff misconduct.

(Spearen Decl. ¶¶ 4–6.)[5]

---

[5] It is unclear, based on the documents submitted by Spearen and her affidavit, whether the April 12, 2021 and July 15, 2021 submissions related to the July 2019 incident, or alleged other staff misconduct.  (*See* Dkt. No. 39-1 at 9, 11.)  The documents themselves were not provided.

9

Cruz disputes Spearen's assertions. Although his response is not entirely clear about what steps he took to try to exhaust his remedies, he contends that the administrative remedies were not available to him because prison administrators impeded the process. (Opp'n to Mot. Summ. J. 5, Dkt. No. 46.) In his response to the motion for summary judgment, Cruz first states that he filed "BP-9s through 10s" related to both the July 13–14, 2019 incidents and the July 2020 incidents. He suggests that there is no record of them "because the administrative filing process has been impeded." (*Id.* at 2 (citing final paragraph of Exhibit A2).) He then appears to contradict himself and states that, because of the impediments, he has had to resort to submitting "Public Notice and Lawful Protest(s)" to various government agencies, in lieu of BP-8s through BP-11s. And he further maintains that he kept "handwritten copies" of all complaints he submitted, which were all on regular notebook paper because "unit team staff" refused to provide the proper forms.

Significantly, Cruz includes as exhibits entirely handwritten documents, and in three of these he complains about the July 2019 incidents. (Am. Compl., Exs. C1, C2, C3, Dkt No. 46-1, at 16–18.) Those documents are not on official forms, but he has titled them as his BP-9, BP-10, and BP-11 forms, and several of them are also marked as "sensitive" requests.[6] His opposition states that they are copies of forms he submitted. He states that he kept handwritten copies precisely because he knew "the grievances wouldn't be processed" because of the nature of the

---

[6] Cruz argues that the governing regulations allow him to use handwritten forms. For support, he cites to "28 C.F.R. Chapter 1, Section 40" as saying "Inmates may submit handwritten grievances as long as they contain all of the information necessary to understand [the] nature of [the] complaint, etc." (Opp'n to Mot. Summ. J. 3.) The court has been unable to locate that precise language in any portion of Part 40. The closest language appears in 28 C.F.R. § 40.7(a), which states: "The procedure for initiating a grievance shall be simple and include the use of a standard form . . . Forms shall not demand unnecessary technical compliance with formal structure or detail, but shall encourage a simple and straightforward statement of the inmate's grievance." Furthermore, the regulations governing the procedure itself repeatedly refer to the use of "appropriate" forms. Based on the record before the court, it is unclear whether the documents Cruz has submitted would be accepted by the BOP as a proper grievance. As noted, though, Cruz alleges his unit team would not give him grievance forms. If that is true, then his handwritten forms were a reasonable attempt by him to exhaust.

complaints, and "he also knew filing grievances were obligatory before bringing suit." (Opp'n to Mot. Summ. J. 3.) He states that he gave the unit team or mailroom staff the grievances to mail out for him, to no avail. (*Id.*)

If Cruz's testimony is credited as true, then VDOC officials refused to provide forms and either failed to submit and/or failed to log and respond to the grievances Cruz submitted. Despite this, he submitted handwritten copies of a BP9, BP-10, and BP-11. The court thus concludes that there are disputes of fact as to whether administrative remedies were available to Cruz. *See Hill v. O'Brien*, 387 F. App'x 396, 401 (4th Cir. 2010) (reversing district court's grant of summary judgment because there were disputes of material fact concerning exhaustion where plaintiff alleged his counselor refused to provide forms, destroyed them, or failed to respond to them). Moreover, while Spearen has stated that there is no record of Cruz having sent any documents, that is not inconsistent with his allegations that staff refused to mail them out for him. And despite Cruz's opposition, which included copies of the grievances he purportedly submitted, defendants elected not to file any reply with further affidavits or other evidence explaining or contradicting Cruz's evidence.

Defendants cite to cases, including from this court, in which courts have held that if a prisoner fails to provide details about, for example, the date alleged grievances were submitted or to whom, he fails to create a dispute of fact as to whether remedies were unavailable. (Mem. Supp. Mot. Summ. J. 9 (citing, *e.g.*, *Knutson v. Hamilton*, Case No. 7:20-cv-00455, 2021 WL 4163981, at *4 (W.D. Va. Sept. 13, 2021)). To be sure, wholly conclusory or unsubstantiated assertions about interference are insufficient to defeat summary judgment. *See Pickens v. Lewis*, No. 1:15-cv-275-FDW, 2017 WL 3277121, at *4 (W.D.N.C. Aug. 1, 2017). But here, Cruz has provided dated documents that are purportedly copies of those he submitted, but to which he says he never received a response, and which were not recorded as received by the BOP. Within at

11

least two of the documents themselves (the BP-10 and BP-11), there are references to Cruz not receiving a reply to the prior submission. (*See* Dkt. No. 46-1, at 17, 18.) The court believes that his documents have created a sufficient dispute of material fact to defeat summary judgment.

### 3. Claims Against Specific Defendants

In addition to their arguments concerning qualified immunity and exhaustion, defendants also argue that claims against five of the defendants should be dismissed for additional reasons. First, they correctly note that Cruz's claims against defendants Vinzant, Mullins, and Brown stem from an unrelated disciplinary proceeding, which occurred in July and August 2020.[7] (*See also* Opp'n to Mot. Summ. J. 11 (Cruz acknowledging that the July 29, 2020 incident is "unrelated" to the July 13, 2019 assault, although he claims it is part of an "ongoing disregard for prisoner rights" generally).) Defendants do not address the substance of these claims but simply argue that Cruz may not "bootstrap" unrelated allegations to his primary claims in this case. (Mem. Supp. Mot. Dismiss 12–13.) The court agrees.

Cruz's attempt to join those defendants with regard to claims unrelated to his other claims violates the rules regarding joinder of defendants. *See* Fed. R. Civ. P. 20. Rule 20 allows a plaintiff to join different defendants in the same suit only if the claims against them arose out of the same transaction or occurrence, or series thereof, and contain a question of fact or law common to all the defendants. Fed. R. Civ. P. 20(a)(2). Thus, where—as here—claims arise out of different transactions, as they do here, joinder of the claims in one lawsuit is not proper. Accordingly, the court will sever the claims against defendants Mullins, Brown, and Vinzant and direct the Clerk to open a new case consisting only of Cruz's claims against those three

---

[7] His claims against defendant Vinzant are claims of property deprivation that occurred in conjunction with a transfer as a result of that disciplinary hearing. In his opposition, Cruz also states that Vinzant was the individual who completed the incident report leading to the disciplinary charges against him.

defendants. Those defendants also will be terminated as defendants to this case. If Cruz wants to continue to pursue his claims arising from the 2020 disciplinary proceeding and against those defendants, he must do so in the separate action. Alternatively, if he does not want to proceed in that case, he may ask to dismiss it without prejudice.[8]

Defendants also contend that the claims against Taylor and Nurse Bowman must be dismissed, although their arguments are cursory. As to Taylor, Cruz alleges that he failed to loosen the restraints when Cruz complained, provided Cruz with a mattress after he requested one, and accused Cruz of being a "paper pusher." The only potentially viable claim arising from those allegations is a conditions-of-confinement claim based on refusing to loosen the restraints, which some courts have analyzed as an excessive force claim. *See, e.g.*, *Jeffers v. Woodson*, No. 7:20-CV-00060, 2021 WL 3423551, at *5 (W.D. Va. Aug. 5, 2021) (collecting authority and explaining that cases alleging an Eighth Amendment violation resulting from improper restraints "have sometimes been analyzed as excessive use of force claims, and in other instances been treated as conditions of confinement claims").

As to Nurse Bowman, Cruz alleges that she was present and observed officers choking, elbowing, punching, kicking, and verbally assaulting Cruz, but she failed to intervene. (Am. Compl. 13.) Cruz also claims that she falsified documentation regarding his medical checks,

---

[8] If the disciplinary proceedings Cruz is challenging resulted in the loss of earned good time credits, then the proper vehicle for such a due process challenge is a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241, not a civil rights action. *Cf. Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) (explaining that a civil rights "action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration"). Cruz does not provide information about what penalty he received as a result of these proceedings, so it is unclear whether his claim must be brought under § 2241.
  If they are proper § 2241 claims, moreover, Cruz must exhaust his available administrative remedies prior to seeking § 2241 relief, *McClung v. Shearin*, 90 F. App'x 444, 445 (4th Cir. 2004) (unpublished) (citing *Carmona v. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001)). It is unclear from the current record whether Cruz has done so.

suggesting that she knew the restraints were causing him harm but failed to loosen the restraints or otherwise provide medical care.  These claims also would be Eighth Amendment claims.

Neither party has briefed the issue of whether a *Bivens*-like remedy extends to the context of these claims.  Accordingly, rather than address them at this time, the court will deny the motion to dismiss without prejudice as it pertains to defendants Cruz and Taylor.  In the event that the court concludes that Cruz has exhausted his administrative remedies with respect to some or all of his claims, then defendants Bowman and Taylor will have an opportunity to refile a motion for summary judgment.

### III.  CONCLUSION

For the foregoing reasons, defendants' motion to dismiss, or, in the alternative, for summary judgment will be denied without prejudice.  An appropriate order will be entered.

Entered: July 29, 2022.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge